1   JOEL LEVINE, State Bar No. 52565
    JOEL LEVINE, A PROFESSIONAL CORPORATION
2   695Town Center Drive, Suite 875
    Costa Mesa, California 92626
3   Telephone:   714 662 4462
    Facsimile:   714 979 9047
4   Email:       jlesquire@cox.net

5   PAUL S. MEYER, State Bar No. 51146
    PAUL S. MEYER, A PROFESSIONAL CORPORATION
6   695 Town Center Drive, Suite 875
    Costa Mesa, California 92626
7   Telephone:   714 754 6500
    Facsimile:   714 979 9047
8   Email:       pmeyer@meyerlawoc.com

9   Attorneys for Defendant GILBERT MICHAELS

10  MELISSA A. WEINBERGER, State Bar No. 238432
    AMANDA R TOUCHTON, State Bar No. 220430
11  TOUCHTON & WEINBERGER LLP
    800 Wilshire Boulevard, Suite 1050
12  Los Angeles, California 90017
    Telephone:   213 867 6350
13  Facsimile:   213 673 1386
    Email:       melissa@twcounsel.com

14
15  Attorneys for Defendant JERRY FELDMAN

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18

19  UNITED STATES OF AMERICA,  )   CASE NO.  SA-CR-16-76 -JVS
                               )
20                 Plaintiff,  )
                               )   DEFENDANTS' NOTICE OF MOTION
21         vs.                 )   AND   MOTION   TO   COMPEL
                               )   DISCOVERY; EXHIBITS INCLUDING
22  GILBERT MICHAELS, et al.,  )   DECLARATION OF MONA AMER
                               )
23                 Defendants. )   Date:   June 25, 2018 (Previously set by
                               )           the Court)
24                                 Time:   9:00 a.m.
                                   Place:  Courtroom 10C,  the Honorable
25                                         James  V.  Selna,  United  States
                                           District Judge
26

27

28

TO ASSISTANT UNITED STATES ATTORNEYS GREG STAPLES AND BRADLEY MARRETT:

PLEASE TAKE NOTICE that on June 25, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, defendants Gil Michaels and Jerry Feldman, by and through their counsel of record, will move to compel the production of discovery pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution, Fed. R. Crim. P. 16, and relevant case law, and to compel the production of documents and things requested below.

This Motion is based on the accompanying Memorandum of Points and Authorities, attached exhibits and declarations, all files and records in this case, and any such arguments and evidence as may be presented at or before the hearing on this Motion.

Dated:  May 24, 2018                    Respectfully submitted,

                                        JOEL LEVINE
                                        A PROFESSIONAL CORPORATION


                                        ___/s/_____
                                        JOEL LEVINE

                                        PAUL S. MEYER
                                        A PROFESSIONAL CORPORATION


                                        ___/s/_____
                                        PAUL S. MEYER

                                        Attorneys for Defendant GILBERT MICHAELS


                                        TOUCHTON & WEINBERGER LLP


                                        ___/s/_____
                                        MELISSA A WEINBERGER

                                        Attorneys for Defendant JERRY FELDMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this discovery motion, the defense seeks answers to the process by which the current prosecution team has now apparently come into possession of a critical attorney-client privileged document.  The document was created by Gil Michaels ("Mr. Michaels") in June 2013–just days after his business was searched by many of the same law enforcement agencies and agents involved in the instant case–and emailed to his lawyers.  This document, to preserve what remains of its integrity, is filed under seal.  The document reveals factual information provided by Mr. Michaels to his lawyers in 2013 about issues which are identical to those currently charged against him in the criminal case.  Namely, Mr. Michaels wrote about his views on the seminal question of the independence of the sales companies (many of whose owners are charged as co-defendants in the instant case) from Mr. Michaels' own company, GNM.  The document relates the thoughts of Mr. Michaels to his counsel.

In June 2016, concurrently with Mr. Michaels' arrest on the instant Indictment, his laptop computer was seized by government agents pursuant to a search warrant. The search warrant included mandated "Procedures for Handling Attorney-Client Materials."  See Exhibit 1 at pp. 26-28.  Per the the search warrant, the government was required to utilize a specified taint team and delineated procedures in order to avoid revealing attorney-client privileged materials to the prosecution team.  These protocols were not successful.

Accordingly, the prosecution's possession of an attorney-client privileged document is a symptom of a larger problem involving the government's failure to properly abide by the mandates of the search warrant and other established protocols for handling potentially attorney-client privileged materials.  The insight gained by this invasion of the defense camp is incalculable.

This Motion seeks critical discovery on a narrow issue and follows requests which began in mid-2017.  Specifically, Mr. Michaels and co-defendant Jerry

1    Feldman ("Mr. Feldman") seek a report describing exactly how and when Mr.

2    Michaels' hard drive was extracted and analyzed by a taint team, identifying the

3    members of the taint team (including the Assistant U.S. Attorney overseeing said

4    team), and a copy of the purportedly "clean" version of Mr. Michaels' laptop

5    computer hard drive that was reviewed by Huntington Beach Police Department

6    ("HBPD") Detective Kevin Kesler, a member of the prosecution team.  This evidence

7    and information is essential–not only because it is rightfully subject to disclosure to

8    the defense (see *Brady v. Maryland*, 373 U.S. 83 (1963))–but because the defense has

9    learned that from his review of Mr. Michaels' laptop computer, Detective Kesler

10   provided a critical document that is protected by the attorney-client privilege to

11   government counsel.

12        In response to repeated requests by Mr. Michaels and Mr. Feldman for the

13   aforesaid report, see letter of February 1, 2018 at Exhibit 2, and for a copy of what

14   Detective Kesler reviewed when he selected materials (including an attorney-client

15   privileged document) which he sent to the other members of the prosecution team, the

16   government has maintained that it has produced all necessary materials because it has

17   previously provided (1) a Forensic Toolkit Report ("FTK") that shows items in Mr.

18   Michaels' computer marked by the taint team as "privileged" or "potentially

19   privileged" that were purportedly "hidden" from the prosecution team (i.e., Detective

20   Kesler); and (2) a mirror image of Mr. Michael's computer hard drive that was made

21   earlier.  The government claims that the defense can compare these two sets of

22   materials themselves, and thereby determine whether the FTK report fully captured

23   all of the privileged or potentially privileged items from Mr. Michaels' computer.

24   See emails attached at Exhibit 3.  The defense respectfully submits that this is not a

25   workable solution, because it will not provide certainty in determining what Detective

26   Kesler actually reviewed, nor would it sufficiently describe the entire taint review

27   process.

28   / / /

1    In the most recent previous hearing, the Court instructed the prosecution team
2 to attempt to provide to the defense the materials which Detective Kesler examined,
3 if possible.  Neither those materials nor the report of the taint team has yet been
4 received.
5    On May 3, 2018 defense counsel for Mr. Michaels and Mr. Feldman met with
6 the prosecution team lawyers.  The purpose of the meet-and-confer was to try again
7 to get to the bottom of the issue.  In a show of good faith, the defense disclosed to the
8 prosecution team not only the specific attorney-client privileged document described
9 above, but the email transmission from Mr. Michaels to his lawyers to which that
10 document was attached.  The defense also disclosed the name of the defense-retained
11 expert and his conclusion that based on his review of the relevant documents and
12 communications, it appeared the "clean" version of Mr. Michaels' laptop that
13 Detective Kesler viewed no longer exists (and is impossible to replicate with
14 certainty), and that he cannot replicate with certainty what Mr. Kesler reviewed.
15 After discussion, the prosecution team indicated that they would endeavor to locate
16 the taint team report.  On May 11, 2018 the government responded by email, attached,
17 which again describes the programs used, but does not provide a copy of what
18 Detective Kesler reviewed and subsequently sent to the other members of the
19 prosecution team.  In the prosecution team's response, no Assistant United States
20 Attorney is identified, and no report describing the methodology for segregating
21 material nor a copy of what Detective Kesler reviewed is provided.  See email of
22 AUSA Marrett, attached as Exhibit 4.  In a further act of good faith, the defense
23 offered to have Mr. Maryman speak with a designated computer expert representative
24 of the government.  Despite Mr. Maryman's availability, there has been no meeting
25 to date that has been arranged.
26    The issue is not complicated.  The allegations in the indictment focus on issues
27 involving whether Mr. Michaels' business is independent from the sales companies.
28 The government is now in possession of an attorney-client protected document that

goes to the heart of these issues. That document was procured from a laptop computer of Mr. Michaels which was supposed to have been protected by the mandated procedures set forth in the warrant (see Exhibit 1 at pp. 26-28). At a specific point in time Detective Kesler viewed the supposedly redacted product of a taint team filtering of Mr. Michaels' laptop computer. The express intention of the court which issued the search warrant was that a taint team review the seized materials and filter out the likely attorney-client materials in such a way that the process could be later verified to preserve its integrity. At the time of the search , the fact that Mr. Michaels and his lawyers had for years previously defended FTC allegations identical to the criminal case now before this Court was obvious to everyone involved, agents included. Indeed, Detective Kesler played a major role in the prior cases. The likely presence of attorney-client materials was manifest.

In such matters it is routine for taint team agents to document what they have received, what they have done to filter out tainted materials, and to document and preserve the product of their work. An AUSA is supposed to provide oversight. All of this routinely ensures the integrity of federal prosecutions.

Requiring that the defense themselves try to cobble together a recreation would foist an impossible task upon the defense and force the defense to rely on guesswork as to whether or not they were getting an accurate recreation of what Detective Kesler saw, especially with trial less than five months away. Such burden-shifting violates Mr. Michaels' and Mr. Feldman's due process rights and is fundamentally unfair.

## II.  FACTS

### Overview

G.N.M. Financial Services Inc., dba IDCSERVCO (also referred to as Mytel) ("GNM") was a product supply company that fulfilled and serviced orders for toner throughout the United States for over 40 years. GNM serviced sales for smaller companies, frequently referred to as Independent Sales Companies ("ISCs"), that would sell toner and then assign the sale to GNM to fulfill. GNM would ship the

1    toner, invoice the customer, and handle other customer service issues.  Essentially,

2    the allegations in this case are that the ISCs made false representations in order to sell

3    toner and that GNM President Gil Michaels and GNM Vice President Jerry Feldman

4    conspired with, and aided and abetted, the ISCs to effectuate toner sales.

5         In October 1987 the Federal Trade Commission ("FTC") filed a complaint

6    against GNM, Gil Michaels and Jerry Feldman alleging that GNM was engaged in

7    misleading business practices related to its sales.  The parties settled on November

8    10, 1988 in a stipulated final order and judgment (Mr. Feldman was dismissed) which

9    allowed GNM to continue operating as long as it followed a set of guidelines agreed

10   to by the parties.  The FTC continued oversight and communications with counsel for

11   GNM for many years thereafter.  As set forth in the Indictment in this matter, over the

12   years GNM faced other legal challenges by various state and federal entities, some

13   private companies and the FTC.  Throughout these years, the company, and

14   individuals where necessary, were always represented by counsel.  Indeed, at the time

15   of the seizure of Mr. Michaels' laptop, Mr. Michaels and Mr. Feldman, both

16   represented by separate counsel, were in active litigation with the FTC concerning

17   many of the same allegations that underlie the instant case.

18   **Seizure on June 28, 2016**

19        On June 26, 2016, Mr. Michaels was arrested and his laptop seized.  See Search

20   Warrant, attached as Exhibit 1.  The warrant describes that potentially privileged

21   items would be seized from Mr. Michaels' premises and set forth a methodology by

22   which such privileged items were to be handled.  See Exhibit 1 at pp. 26-28.

23        HBPD Detective R. Mena, described the execution of the search, stating, "FBI

24   Agent Craig Mason was present during the search of Michaels' residence and served

25   as the taint agent."  See Huntington Beach Police Report, Bates 00472804 at Exhibit

26   5.  The report details the items seized from Michaels' residence, including "Evidence

27   item 204 (Silver Mac Book Pro laptop computer), was located on the north corner of

28   the office desk."  See Bates 00472805 at Exhibit 5.  According to the report, "All of

1  the listed items of evidence were kept in [Detective Mena's] possession until they

2  were packaged, sealed and stored at HBPD.  [Detective Mena] handed the listed

3  evidence to Property Officer Curran-Tubb who took possession of the items."  See

4  Bates 00472804-00472806 at Exhibit 5.

5      On August 1, 2016, Assistant United States Attorney Greg Staples emailed Mr.

6  Michaels' counsel, Joel Levine, stating that the government was "preparing to

7  conduct a taint search of the laptop computer and cell phone seized during the search

8  warrant" of Michaels' home.  Mr. Staples asked Mr. Levine for additional search

9  terms so that a taint team could search for privileged items.  See Docket 254, p. 3,

10 Government's First Status Report filed August 12, 2016, attached as Exhibit 6.

11 ("There are several digital devices that are currently being reviewed by taint teams

12 for privileged information.")  Mr. Levine provided a complete list of Mr. Michaels'

13 and Mr. Feldman's prior attorneys, including those whose names are on the email

14 transmission that is now in the possession of Detective Kesler and the prosecution

15 team.

16      The laptop was returned to Mr. Michaels on November 21, 2016.

17 **Defense Requests for Review of Michaels' Laptop**

18     For many months, counsel for Mr. Michaels and Mr. Feldman have made

19 numerous and repeated requests for information pertaining to the search and seizure

20 of Mr. Michaels' laptop computer.  See Letter dated February 1, 2018, at Exhibit 2.

21 At the status conference on March 5, 2018, the government, at the Court's request,

22 indicated that it was checking with CART to find out whether it could produce a copy

23 of what Detective Kesler reviewed.  Then, by letter dated March 22, 2018, the

24 government stated that the defense "could replicate the universe of documents

25 reviewed by Detective Kesler by 'hiding' from the image of the hard drive all of the

26 items designated as 'privileged' in the FTK privilege report."  Government letter,

27 attached as Exhibit 7.  The government also explained how the privilege review was

28 / / /

1  performed, without attaching a report by law enforcement, nor identifying the taint

2  team's AUSA.

3          **Review of Privileged Document(s)**

4        On or about February 14, 2018, the government sent counsel a copy of the six

5  items of discovery that prosecution team member Detective Kesler copied from Mr.

6  Michaels' laptop and provided to others on the prosecution team.  Letter from AUSA

7  Staples, dated February 14, 2018, attached as Exhibit 8.  Upon review of those

8  documents, the defense immediately identified a document, attached <u>under seal</u>,

9  addressing issues identical to those now being prosecuted criminally,  that was

10  prepared by Mr. Michaels for his legal counsel in earlier litigation.  Indeed, counsel

11  confirmed that Mr. Michaels sent the document to his lawyers in an email on June 13,

12  2013.  Declaration of Mona Amer, at Exhibit 9.

13  **III.  ARGUMENT**

14        The government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963)

15  extends to material evidence helpful to the accused on a motion to suppress. *United*

16  *States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000); *United States v. Barton*,

17  995 F.2d 931, 933-935 (9th Cir. 1993) (". . . we hold that the due process principles

18  announced in *Brady* and its progeny must be applied to a suppression hearing

19  involving a challenge to the truthfulness of allegations in an affidavit for a search

20  warrant."). "The general remedy for violation of the attorney-client privilege is to

21  suppress introduction of the privileged information at trial." *United States v. SDI*

22  *Future Health*, 464 F. Supp. 2d 1027 (D. Nev. 2006).

23        In the instant case, the defense has already identified one <u>critical </u>attorney-client

24  privileged document in the government's possession.  Detective Kesler, a member of

25  the joint task force and government's "clean" team, may have reviewed other

26  privileged documents from Mr. Michaels' laptop.  In order for the defense to fully

27  evaluate whether such prohibited disclosures occurred, the defense must have a

28  duplicate copy of the hard drive that Detective Kesler reviewed.  The defense must

also have a report regarding the search by the "taint" team to understand what methodology was used and what practices were employed to maintain the integrity of the materials viewed.  These procedures are all mandated by the provisions of the search warrant referred to above and attached hereto as Exhibit 1 at pp. 26-28, including a taint team of agents and an Assistant United States Attorney (still unidentified).

## IV.   CONCLUSION

Mr. Michaels and Mr. Feldman have the right to review a duplicate copy of the purportedly "clean" hard drive that Detective Kesler reviewed in order to assess whether the taint team properly and fully segregated attorney client privileged materials.  The defendants also have a right to review law enforcement reports regarding the method by which the segregation was conducted and to know the name of the AUSA who was assigned when when the warrant was issued.  Accordingly, the defendants respectfully request the Court compel the government to provide said evidence.

Dated:  May 24, 2018                    Respectfully submitted,

JOEL LEVINE
A PROFESSIONAL CORPORATION


_____/s/_____
JOEL LEVINE

PAUL S. MEYER
A PROFESSIONAL CORPORATION


_____/s/_____
PAUL S. MEYER

Attorneys for Defendant GILBERT MICHAELS

TOUCHTON & WEINBERGER LLP


_____/s/_____
MELISSA A WEINBERGER

Attorneys for Defendant JERRY FELDMAN

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY;
EXHIBITS INCLUDING DECLARATION OF MONA AMER